IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

NAOMI McCRAY,                          )
                                       )
        Plaintiff,                     )
v.                                     )      CASE NO. 1:06-cv-1123-ME
                                       )
WAL-MART STORES, INC.,                 )
                                       )
        Defendant.                     )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

Currently pending before the undersigned Magistrate Judge is Defendant Wal-Mart Stores East, L.P.'s (Wal-Mart) Motion for Judgment on the Pleadings (Doc. #40), Motion for Summary Judgment (Doc. #42), and Plaintiff Naomi McCray's (McCray) Motion for Denial of Summary Judgment (Doc. #52).  For the reasons that follow, the Magistrate Judge RECOMMENDS the Motion for Judgment on the Pleadings (Doc. #40) and the Motion for Summary Judgment (Doc. #42), be GRANTED, the Motion for Denial of Summary Judgment (Doc. #52) be DENIED, and this case be DISMISSED.

## I.    STANDARD OF REVIEW

### A.    Judgment on the Pleadings

"Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. [A court] must accept the facts alleged in the complaint as true and view them in the light most favorable to the nonmoving party."  *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1301 (11th Cir.

2001).

**B.    Summary Judgment**

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party.  An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir.1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id*. at 322-23.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party

2

to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.  To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, a court ruling on a motion for summary judgment must believe the evidence of the non-movant and must draw all justifiable inferences from the evidence in the non-moving party's favor.  *Anderson*, 477 U.S. at 255.  After the non-moving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c).

## II.    FACTS

The Court has carefully considered all deposition excerpts and documents submitted in support of the motions.  In its Motion for Summary Judgment, Wal-Mart has submitted a statement of undisputed facts, as required by the Court.  McCray has raised no objection to these facts.[1]  The submissions of the parties, viewed in the light most favorable to the non-moving party, establish the following relevant facts:

McCray is an African-American woman who worked as a cashier in a Wal-Mart Store in Dothan, Alabama, from April 1996 to June 2006.  Wal-Mart is an international retailer

---

[1]  As the Court found many of McCray's claims barred by the statute of limitations, many of the facts put forth by the parties are irrelevant.

with stores in the United States, Wal-Mart is organized into divisions, which are divided into regions, and sub-divided into districts known as markets.  Each Wal-Mart store is headed by a manager who oversees day-to-day operations at the store, aided by assistant managers and co-managers, and who reports to district and regional management. Individual Wal-Mart stores are organized into departments which operate under the supervision of a department manager, who reports to the assistant managers, co-managers and manager.

Wal-Mart opened Store #604 in Dothan, Alabama, in November 1983; the store moved to a new building in the Fall of 2002. During McCray's employment at Store #604, Pete White was the store manager, Leatricia Ahmadu was assistant manager and then co-manager, and Judy Langford was the district manager and then market manager. McCray has eleven (11) *Performance Evaluations* in her personnel file.

All evaluations, with the exception of the years 1997 and 2000, indicate McCray "meets expectations."   The 1997 and 2000 evaluations indicate McCray "exceeds expectations."   McCray's last evaluation, dated 10 March 2006, showed McCray met expectations, but needed to smile and greet customers and needed to be willing to work where assigned.

McCray also has two *Commendations* in her file.  The first *Commendation*, dated 1 September 1997, gave McCray a $.20/hour increase in pay due to the federal minimum wage increase.  The second *Commendation*, dated 9 February 1998, moved McCray from part-time to full-time.

McCray received three (3) *Coachings for Improvement* during her tenure at Wal-Mart. The first written *Coaching* was given to McCray on 14 October 1997, for violation of the company's policy against holding reduced-priced merchandise at her register. The second written *Coaching,* dated 29 November 2001, reprimanded McCray for unapproved overtime. The third *Coaching*, dated 10 May 2004, was given to McCray for misconduct when she refused to relieve an associate on a cash register she thought was too cold.

In June 2006, Wal-Mart terminated McCray's employment for theft after Asset Protection, the Wal-Mart department in charge of investigating potential theft, documented that in February 2006 McCray requested and obtained an oil change at Wal-Mart's Tire and Lube Express Center and did not pay for it. Wal-Mart's Regional Asset Protection Manager met with McCray to ask for an explanation. McCray said she did not remember whether she had paid for the oil change. Based on the documentation, McCray's employment was terminated for her integrity violation.

### McCray's EEOC Charge

On 11 June 2006, McCray filed a charge of discrimination with the United States Equal Employment Opportunity Commission (EEOC). Her charge alleged that she was discriminated against because of her race, sex, and color and was retaliated against. The only factual allegation in the charge is that she was falsely accused of stealing an oil change as retaliation for complaining about my unfair treatment at Wal-Mart.

McCray asserted that she paid for an oil change and that she had proof on her credit

5

card.  The EEOC found no evidence that discrimination or retaliation had occurred, and issued a notice of right to sue.  This lawsuit followed.

Through her former counsel, McCray alleged that she was subjected to a racially hostile work environment, that she was discriminated against because of her race in terms of pay, promotions, scheduling, training, discipline and termination, and that she was disciplined, given reduced hours, denied promotions, and later discharged in retaliation for having opposed racial discrimination.  *See* (Doc. #17).

### The Alleged Discrimination in Setting Schedules

Wal-Mart uses a computer program to prepare schedules for all associates, including cashiers.  The program ranks cashiers based on three factors, length of service, current score for the number of items scanned per hour (*IPH*), and self-reported availability for work.  The computer program does not have access to demographic information, such as race, and therefore does not use race as a factor.  The computer selects the highest ranked cashier first, then moves to the next ranked cashier and so on, until all available shifts are filled.

The *IPH* score is computed each week, automatically. Availability is controlled by the associate; each associate's personnel file includes an Availability Form completed by the associate which provides the hours she is willing and able to work.

McCray's original application in 1996 indicated she was available for all hours. Later, McCray reported that she was available from around 6 a.m. to 6 p.m. Monday through Saturday, and was unavailable for work on Sunday.  By October 2000, McCray had expanded

her availability to 5 a.m. to 6 p.m. Monday through Saturday but unavailable on Sundays. In 2001, McCray decreased her availability to 6 a.m. to 6:30 p.m. Monday, Tuesday, Thursday, and Friday, 6 a.m. to 6 p.m. Wednesday and Saturday, and unavailable Sunday. In 2002, McCray decreased her availability even more to 6 a.m. to 6 p.m. Monday, Wednesday, and Saturday, and 6 a.m. to 6:30 p.m. Tuesday, Thursday, and Friday, and was not available Sunday.  In July 2005, McCray increased her availability to  6 a.m. to 6:30 p.m., Monday, Tuesday, Thursday, Friday, and Saturday and from 6 a.m. to 6 p.m. Wednesday.

When McCray informed Wal-Mart she was unhappy about her schedule, Wal-Mart explained to McCray how the schedule was created, and encouraged her to open up her availability so that she would be selected for more shifts.

Around July 8, 2005, McCray met with Wal-Mart managers to discuss her hours being "cut up," that is, having a different schedule each day.  Wal-Mart informed McCray that, for the week of July 2-8, she was ranked twenty first among cashiers.  Wal-Mart then reviewed each day with McCray and explained why she was not selected for certain time slots. McCray refused to make any changes to her availability.  McCray also complained that she was omitted from the schedule for 6-12 August 2005, but was reminded that she had requested vacation for that week.  McCray persisted and was scheduled to work that week.

### The Allegedly Discriminatory Failure to Train

Starting at orientation, Wal-Mart uses computer-based learning to provide comprehensive training for all associates, including cashiers.  Like all Wal-Mart associates,

McCray was required to complete general training regarding company policies and procedures, and specific training regarding her duties as a cashier.  From 1996 until 2006, McCray took at least sixty training classes.  From 2000 to 2005, Wal-Mart management explained the computer scheduling system to McCray on at least ten occasions.

**The Alleged Discriminatory Discipline**

Wal-Mart has in place a *Coaching for Improvement Policy* which is used when an associate's behavior fails to meet the Company's expectations in any one of three established categories: (1) Job Performance, (2) Misconduct, and (3) Gross Misconduct.  The policy provides that associates who fail to meet expectations regarding job performance or who engage in misconduct are subject to a four-part progressive discipline policy: (1) verbal warning, (2) written warning, (3) decision making day, and (4) termination.  Associates who engage in gross misconduct are subject to immediate termination.  Each written *Coaching* is valid for one year, but if it is advanced to the next level it remains valid for an additional year from the date it is advanced.  On 14 October 1997, *i.e.,* nine years before she filed her lawsuit, McCray received a written *Coaching* for holding towels that were on sale at her register so that she could purchase them later.  It is against company policy for an associate to hold merchandise that is on sale.  McCray claims that two white cashiers committed the equivalent offense and were not disciplined.  McCray did not lose pay or suffer any tangible detriment because of the *Coaching*.

In May 2004, McCray received a written Coaching for refusing to work on a check

8

out counter that she felt was too cold.  McCray claims that she had arranged in advance to swap registers with another cashier.  The Customer Service Manager (CSM) on duty asked McCray to go a certain register, McCray refused and, according to McCray, told the CSM it was because the register was too cold.  Although she did not raise any issue regarding race at the time, McCray testified in deposition that the *Coaching* was unfairly based on race because, as she stated: "some people are more cold natured than others."  (Doc. #42-10 at 70).  McCray also claims that in 2005 she received a pink slip for putting an X on a traveler's check.  McCray alleges she was trained to put a large "X" on traveler's checks when she was first employed at Wal-Mart in 1996.  Wal-Mart claims to have no record of the event and denies that it happened.

On another occasion, McCray alleges she received a pink slip for not maintaining an organized drawer at her cashier stand even though her drawer was in order.  McCray was never informed who complained about her drawer and the pink slip she received was not signed. Wal-Mart has no record of this event.

### The Alleged Discriminatory Pay and Raises

McCray started work at Wal-Mart in April 1996 at an hourly rate of $5.00.  Prior to June 2004, Wal-Mart's written guidelines established starting pay rates for each job in the store. The guidelines allowed a variance of up to $2.00 per hour above the position start rate based on additional skills, experience, or education that would enhance the newly hired associate's ability to perform the job. In June 2004, Wal-Mart established a formulaic pay

adjustment system based solely on years of work experience.  Under the new system a new hire worksheet is used to calculate total starting pay.

Prior to June 2004, an associate who "meets expectations" in annual evaluations received a 4% raise while an associate who "exceeds expectations" received a 5% raise. Starting in June 2004, an associate who "meets expectations" in annual evaluations received a $.40/hour raise while an associate who "exceeds expectations" received a $.55/hour raise. Associates who exhibit exceptional performance in the execution of their job responsibilities can earn additional merit increases.

McCray received an unscheduled raise of $.20 per hour in September 1997 when the federal minimum wage increased.  McCray received periodic pay raises throughout her employment so that her pay rate was $8.93 per hour at the time of her termination. Through 2004, McCray received an average 4% raise each year her annual evaluation determined she "meets expectations" and roughly a 5% raise each year her annual evaluation determined she "exceeds expectations."  In 2005 and 2006, McCray received a $.40/hour raise each year because her rating was "meets expectations."

Plaintiff alleges that Wal-Mart compensated another cashier, Walden, at a higher rate due to race.  Cashier Walden started almost four years later than McCray, on 1 March 2000, at a pay rate of $5.75, having previously worked as a cashier at Rite-Aid and K-Mart.   The federal minimum wage had increased since McCray started working, and Wal-Mart's guidelines allowed for up to $2.00 per hour additional pay for appropriate experience.

10

Walden earned the highest possible performance evaluations - "exceeds expectations"- from 2001 through 2006.    Consistent with Wal-Mart's written guidelines for pay raises for associates whose evaluation "exceeds expectations," Walden received a 5% raise each year from 2001 to 2004, and a $.55/hour raise for 2005 and 2006. Also, Walden received an *Associate Commendation* in November 2003 which gave her an additional 5% raise.  Walden was promoted to In-stock Associate in August 2006. Consequently, after that date she was in a different pay classification than McCray.

### Hostile Work Environment

In February 2003, McCray's grandmother passed away and McCray filled out paperwork for three days of bereavement pay. When McCray returned to work the following week she checked the time clock and it indicated she was credited for the correct amount of leave.   However, when the next pay period arrived McCray was only paid for sixteen hours, eight hours fewer than she expected.   McCray called the Wal-Mart *Associate Hotline,* and her complaint was forwarded to Judy Langford, who investigated, discovered a clerical error, and corrected it.

In 2004, McCray was told that she could no longer wear a beret to work because Wal-Mart's rules prohibited hats unless required by the work area.  Although McCray's hat was prohibited, she was allowed to wear a scarf and was satisfied with that compromise.

### Alleged Discriminatory and Retaliatory Termination

In February 2006, McCray took her car to Wal-Mart's Tire and Lube Center and

11

ordered an oil change.  The Tire and Lube Center changed the oil in the car. McCray went

to the Tire and Lube Center and picked up her car keys from Ashley Maccioni, who worked

in the Tire and Lube Center.  Wal-Mart states that McCray did not pay for the oil change, and

that McCray told Maccioni that no work had been done on her vehicle.  Later, Maccioni

called McCray at home to inform her she had forgotten to pay for the oil change.  Maccioni

informed Tire Lube Express Manager Adam Harrison that McCray had not paid for an oil

change.  Harrison reviewed the videotape from the Tire Lube Express for the day in question,

and determined that McCray had in fact received an oil change.  Harrison also checked the

computer billing system and found that McCray had not paid for the service.  Harrison asked

Maccioni to write a statement.   Then, following standard company policy for potential theft,

Harrison referred the matter and the evidence to Wal-Mart's Asset Protection department for

investigation.

In June, 2006, Market Asset Protection Manager Joe Faulk began an investigation of

the incident.  Faulk stated the delay in time between the incident and his investigation was

due to other investigative responsibilities. Faulk pulled a history of the oil changes purchased

by McCray.  This history reflected that all of McCray's oil changes had been paid for with

the exception of the February 2006 oil change.  Faulk also viewed a videotape of the oil

change, spoke to Harrison, and read Maccioni's statement about the matter.  Harrison

described witnessing McCray ask for an oil change.   Faulk stated that during the

investigation he did not know McCray, he did not know her race, and he did not know about

her history of complaints to Wal-Mart.  Faulk arranged a meeting with McCray in Store Manager White's office, witnessed by Assistant Manager Mary McKenzie.  When shown the investigation materails, McCray said she did not remember whether she had paid for the oil change.  The Asset Protection's investigation concluded that McCray had stolen company property.

Based on the documentation reflecting McCray's failure to pay for the oil change, Mr. Faulk, Store Manager Pete White, and Assistant Store Manager Mary McKenzie determined that McCray had engaged in gross misconduct.  Wal-Mart then terminated McCray's employment.

## IV.   DISCUSSION

The Court will first address the Motion for Judgment on the Pleadings, then the Motion for Summary Judgment.

### A.  Judgment on the Pleadings.

#### 1.   McCray's 42 U.S.C. § 1983 Claims

Wal-Mart moves for judgment on the pleadings as to McCray's claims made pursuant to 42 U.S.C. § 1983, because Wal-Mart is not a state actor.

In order "[t]o establish a claim under 42 U.S.C. § 1983, [McCray] must prove (1) a violation of a constitutional right, and (2) that the alleged violation was committed by a person acting *under color of state law*."  *Holmes v. Crosby*, 418 F.3d 1256, 1258 (11th Cir. 2005) (emphasis added) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)).  Defendants acting

under color of state law are "clothed with the authority of state law," *West*, 487 U.S. at 49 (citations omitted), and their "deprivation of a federal right [must] be fairly attributable to the State." *Lugar v. Edmondson Oil Co., Inc.*, 457 U.S. 922, 937 (1982).

McCray's Complaint, as Amended (Doc. #17), alleged neither state action, nor any constitutional violations by a person acting under color of state law.  The Complaint, as Amended (Doc. #17), alleged that Wal-Mart, a private corporation, engaged in discrimination, but did not allege that Wal-Mart was a state actor.[2]   "[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999) (citations omitted).  Therefore, this Court does not have subject matter jurisdiction over McCray's 42 U.S.C. § 1983 claims against Wal-Mart, *Nail v. Community Action Agency of Calhoun County*, 805 F.2d 1500, 1501 (11th Cir. 1986), and judgment on the pleadings is appropriate.

### 2.    *McCray's Title VII claims*

Wal-mart also moves for summary dismissal on the basis that "McCray failed to comply with the statutory prerequisites for a lawsuit under Title VII on her claims regarding

---

[2] "Only in rare circumstances can a private party be viewed as a '[S]tate actor' for section 1983 purposes." *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992).   To find Defendant Wal-Mart a state actor, this Court must find either: "(1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution ('State compulsion test'); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State ('public function test'); or (3) 'the State had so far insinuated itself into a position of interdependence with the [private parties] that it was a joint participant in the enterprise[]' ('nexus/joint action test')." *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001) (quoting *NBC, Inc. v. Commc'n Workers of Am.*, 860 F.2d 1022, 1026-27 (11th Cir. 1988)).  None of those factors exist in this case.

pay, scheduling, discipline, training, promotion, retaliation (for incidents other than her allegedly retaliatory discharge) and hostile work environment racial harassment because these claims were not included in her EEOC charge."  (Doc. #41 at 5).

"[A] private plaintiff must file an EEOC complaint against the discriminating party and receive statutory notice from the EEOC of his or her right to sue the respondent named in the charge." *Forehand v. Fl. State Hosp. at Chattahoochee*, 89 F.3d 1562, 1567 (11th Cir. 1996).  "The purpose of this exhaustion requirement 'is that the [EEOC] should have the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts.'" *Gregory v. Georgia Dept. of Human Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004) (quoting *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 929 (11th Cir. 1983)).  Thus, "[n]o action alleging a violation of Title VII may be brought unless the alleged discrimination has been made the subject of a timely-filed EEOC charge." *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1332 (11th Cir. 2000).  However, McCray's newly raised claims can be heard, if they are "like or related to, or grew out of, the allegations contained in her EEOC charge." *Gregory*, 355 F. 3d at 1279-80.

Wal-Mart argues McCray's claims "regarding pay, scheduling, discipline, training, promotion, retaliation (for incidents other than her allegedly retaliatory discharge) and hostile work environment racial harassment . . . were not included in her EEOC charge." (Doc. #41 at 5).  McCray's EEOC complaint alleges discrimination on the basis of race, color, sex, and

15

retaliation.  In the EEOC complaint, McCray makes a general allegation of discrimination and states that she was wrongfully terminated because of unfair treatment.  (Doc. #42-7)[3]. Specifically, McCray alleges that she was wrongfully terminated after being accused of theft. However, the *only* factual allegation in McCray's EEOC complaint relates to her claim of retaliation.

In her Response (Doc. #51) McCray re-alleges discrimination in a general manner, but then specifically points the Court to her termination based on the allegation of theft. McCray's general allegations of discrimination in the EEOC complaint would not likely lead to an investigation regarding pay, scheduling, discipline, training, promotion, retaliation (for incidents other than her allegedly retaliatory discharge) and hostile work environment racial harassment.  In the EEOC complaint, McCray merely checked the boxes for race, color and gender, but provided no relevant facts in support of these claims, much less the new claims in her complaint.

McCray included a facts sheet with her complaint that only goes to the facts surrounding the accusation of theft and her discharge.  There is nothing in her EEOC complaint related to pay, scheduling, discipline, training, promotion, retaliation (for incidents other than her allegedly retaliatory discharge) and hostile work environment racial

---

[3]  Although, generally, under Federal Rule of Civil Procedure 12(c), if matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment, the Court can consider the EEOC complaint in this case without converting the Motion for Judgment on the Pleadings, because the EEOC complaint is attached to Wal-Mart's pleading and is "(1) central to the plaintiff's claim; and (2) undisputed." *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

harassment.   "EEOC regulations provide that charges should contain, among other things, '[a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices.'"  *Alexander*, 207 F.3d at 1332 (quoting 29 C.F.R. § 1601.12(a)(3)).   Likewise, in her response to the Motion for Judgment on the Pleadings, McCray reiterates only the facts relevant to her discharge rather than any of the newly raised claims.

In this case, based on the claims and facts contained in the EEOC complaint, it is not reasonable to expect that the scope of the EEOC investigation would have included these new claims.   Although this Court is "extremely reluctant to allow procedural technicalities to bar claims brought under [Title VII],"  *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 460-61 (5th Cir. 1970), McCray's claims regarding pay, scheduling, discipline, training, promotion, retaliation (for incidents other than her allegedly retaliatory discharge) and hostile work environment racial harassment, "are inappropriate."  *Gregory*, 355 F. 3d at 1281;  *see, e.g. Andrews-Willmann v. Paulson*, 287 Fed. App'x 741, 745-46 (11th Cir. 2008) (finding failure to exhaust administrative remedies where plaintiff's only reference to failure to promote was one sentence "devoid of any information regarding specific positions or promotional opportunities.").   Therefore, as to these claims judgment on the pleadings is appropriate.[4]

---

[4] Because the Court finds that judgment on the pleadings is appropriate on McCray's Title VII claims regarding pay, scheduling, discipline, training, promotion, retaliation (for incidents other than her alleged retaliatory discharge) and hostile work environment racial harassment are inappropriate, the Court declines to address Wal-mart's arguments that Plaintiff's Title VII claims are time-barred.

### 3.    *McCray's Title § 1981 claims*

Next, Wal-Mart moves for judgment on the pleadings with regard to McCray's claims pursuant to 42 U.S.C. § 1981 that occurred outside the statute of limitations.  Specifically, Wal-Mart argues that McCray's § 1981 claims regarding pay, scheduling, discipline, training, and retaliation (for incidents other than her alleged retaliatory termination) based on events occurring before 20 December 2002, are barred by the four-year statute of limitations and her claim regarding promotion is barred by the two-year statute of limitations.

Prior to the enactment of 28 U.S.C. § 1658(a), federal courts applied the analogous state statute of limitations to § 1981 claims.  *See Goodman v. Lukens Steel Co.*, 482 U.S. 656, 660-61, (1987) (superseded by statute as stated in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004)).  Under the Civil Rights Act of 1991, Congress amended § 1981 to include new causes of action.  *See* 42 U.S.C. § 1981.  In *Jones*, the Supreme Court held that Congress's enactment of § 1658 created a four-year statute of limitations for all newly created causes of action.  *Jones*, 41 U.S. at 382.

Therefore, McCray's § 1981 claims regarding pay, scheduling, discipline, training, and retaliation (for incidents other than her alleged retaliatory termination) based on events occurring before 20 December 2002, are barred by the four-year statute of limitations "catch-all" under § 1658.

"Under *Patterson v. McLean Credit Union*, 491 U.S. 164, [185] (1989), superseded by statute as stated in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 [] (2004), which

applied to § 1981 before the amendments contained in the Civil Rights Act of 1991, a failure-to-promote claim was actionable under § 1981 if the promotion rose 'to the level of an opportunity for a new and distinct relation between the employee and the employer.'" *Price v. M & H Valve Co.*, 177 Fed. App'x 1, 7 (11th Cir. 2006) (citing *Patterson*, 491 U.S. at 185). McCray claims that she was denied a promotion to department manger. This type of promotion rises "to the level of an opportunity for a new and distinct relation between the employee and the employer." *See Hithon v. Tyson Foods, Inc.*, 144 Fed. App'x 795, 799 (11th Cir. 2005) (finding a promotion to human resources manager rises "to the level of an opportunity for a new and distinct relation between the employee and the employer."). "Therefore, [McCray's] failure[-]to[-]promote claims were cognizable before Congress's 1991 expansion of § 1981 and thus remain subject to the Alabama two-year statute of limitations as mandated by *Goodman*." *Hithon*, 144 Fed. App'x at 798.

Therefore, Wal-Mart is entitled to judgement on the pleadings with regard to McCray's § 1981 claims regarding pay, scheduling, discipline, training, and retaliation (for incidents other than her alleged retaliatory termination) based on events occurring before 20 December 2002, and McCray's § 1981 claim regarding failure-to-promote based on events occuring prior to 20 December 2004.

## B.    Summary Judgment

Wal-Mart has moved for summary judgment as to McCray's remaining Title VII and § 1981 claims. "Both of these statutes have the same requirements of proof and use the same

19

analytical framework, therefore [the Court] shall explicitly address the Title VII claim with the understanding that the analysis applies to the § 1981 claim as well." *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998).

### 1.   *Discriminatory Termination*

McCray alleges she was terminated on the basis of race and color in violation of Title VII  and 42 U.S.C. § 1981.  Title VII prohibits an employer from "discharg[ing] any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).  "A prima facie claim of discrimination can be established three ways: 1) direct evidence; 2) circumstantial evidence; or 3) statistical proof."  *Davis v. City of Panama City, Fla.*, 510 F. Supp. 2d 671, 681 (N.D. Fla. 2007) (citing *Earley v. Champion Int'l Corp.*, 907 F. 2d 1077, 1081 (11th Cir.1990)).  A review of the evidence submitted in this case shows that McCray believed she was receiving disparate treatment based on the numerous and varied complaints she made to Wal-Mart.  Those complaints were not related to racial discrimination.  McCray fails to offer evidence for this Court to consider that she was terminated based on discrimination; she merely alleges it, and thus cannot establish a prima facie case of discriminatory termination.

The only possible evidence of discrimination in the entire record consists of a handwritten note by McCray, dated 20 October 1997, wherein McCray writes that she and another black woman were "written up" for intending to buy towels improperly and that two white people who had committed the same act were not, and a letter, dated 13 November

2001, sent to "intake" regarding scheduling. (Docs #53 at 26 & 54 at 23).  Both of these incidents took place outside of the statute of limitations and, in any event, are not sufficient to establish a prima facie case of discrimination.

At best, this evidence would be considered circumstantial.

When a plaintiff offers circumstantial evidence to prove a Title VII claim, we use the analytical framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 [] (1973). Under this framework, the plaintiff must establish a prima facie case of discrimination. The establishment of a prima facie case creates a presumption of discrimination. The employer must then offer legitimate, nondiscriminatory reasons for the employment action to rebut the presumption. If the employer successfully rebuts the presumption, the burden shifts back to the plaintiff to discredit the proffered nondiscriminatory reasons by showing that they are pretextual. *Id*., at 802-04, 93 S.Ct. at 1824-25.

*Standard v. A.B.E.L. Services, Inc*., 161 F.3d 1318, 1332 (11th Cir. 1998).

"Under *McDonnell Douglas*, a plaintiff establishes a prima facie case of race discrimination under Title VII by showing: (1) [she] belongs to a racial minority; (2) [she] was subjected to adverse job action; (3) [her] employer treated similarly situated employees outside his classification more favorably; and (4) [she] was qualified to do the job." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997).  The Court does not find that the handwritten note or the letter establish a prima facie case of discriminatory termination.  McCray was not terminated based on the allegation of improperly buying a towel.  Nor does this handwritten note, which appears to recount a conversation between McCray and another Wal-Mart employee in 1997, establish that Wal-mart terminated McCray in 2006 for complaining about racial discrimination.  Further, the letter establishes that the employee McCray claims was

21

recieving better treatment had been employed by Wal-Mart for seventeen years, which means that the employee and McCray were not similarly situated. *See Holifield v. Reno* 115 F.3d 1555, 1563 (11th Cir. 1997); *see also* discussion regarding disparity in pay, *infra*.

Even if this Court were to assume that McCray did establish a prima facie case, Wal-Mart has provided the Court with legitimate, non-discriminatory reasons for terminating McCray's employment. Specifically, Wal-Mart states that they terminated McCray for theft. McCray admits in her pleadings that Wal-Mart proffered a non-discriminatory reason for her termination. Thus, the burden shifted to McCray to prove WalMart's reasons to be a pretext for unlawful discrimination. McCray has failed to prove pretext. Instead, in her Reply, she merely reasserts her original allegations. Therefore, even were this Court to assume McCray had shown a prima facie case of discrimination, she has failed to rebut the non-discriminatory reasons given for her termination, and summary judgment is appropriate. *See Pace v. Southern Ry. Sys.*, 701 F.2d 1383, 1389 (11th Cir.1983).

### 2.     Retaliatory Discharge

"To establish a claim of retaliation under Title VII or section 1981, a plaintiff must prove that [she] engaged in statutorily protected activity, [she] suffered a materially adverse action, and there was some causal relation between the two events." *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261, 1277 (11th Cir. 2008). McCray states that she was falsely accused of theft (failing to pay for an oil change) in retaliation for numerous complaints of race discrimination. Thus, in order to establish a case of retaliation, McCray would need to

show a causal link between her complaints of racial discrimination and her termination.

Wal-Mart admits that McCray complained on a frequent basis during her employment, but that none of her complaints were based on race discrimination.  As stated above, after reviewing the volumes of records documenting McCray's employment history, her communications with Wal-Mart, and deposition testimony, McCray is unable to provide a causal link between complaints of discrimination and her termination because McCray's complaints were not based on racial discrimination. Thus, McCray is unable to establish a prima facie case of discrimination.

Even if the Court were to consider the handwritten note from 1997 or the letter from 2001, discussed *supra*, as evidence, the temporal proximity of the note and letter, and McCray's 2006 termination is far too distant to establish a causal link.  *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir.2004) ("Where there is no other evidence of causation, a complaint of retaliation fails as a matter of law if there is a substantial delay between the protected activity and the adverse employment action."); *c.f. Summers v. Winter*, 2008 WL 5227192, *4 (11th Cir. 2008) (temporal proximity of several months too far); *Curtis v. Broward County*, 292 Fed. App'x. 882, 884 (11th Cir. 2008) (finding temporal gap of nine months insufficient to establish a causal connection); *Scalone v. Home Depot U.S.A., Inc.*, 280 Fed. App'x. 905, 909 (11th Cir. 2008) (finding temporal gap of five months insufficient to establish a causal connection).

Further, even if the Court were to find that McCray had established a prima facie case,

23

which she did not, and a presumption of discrimination applied, the burden would shift to Wal-Mart to articulate "legitimate, nondiscriminatory reasons for the challenged employment action." *Combs v. Plantation Patterns*, 106 F.3d 1519, 1528 (11th Cir. 1997). As discussed above, Wal-Mart has articulated nondiscriminatory reasons for McCray's termination, and McCray has not met her "ultimate burden of proving the reason to be a pretext for unlawful discrimination," *Denney v. City of Albany*, 247 F.3d 1172, 1183 (11th Cir. 2001). Therefore, summary judgment is appropriate.

### 3.    *Disparity in Pay*

McCray claims that she was paid less than a white cashier, and that this discrepancy in pay was due to discrimination. "To establish a prima facie case of disparate pay, Plaintiff must show that [she] occupies a job similar to that of higher paid persons who are not members of [her] protected class." *Nicholas v. Bd. of Tr. of Univ. of Alabama*, 251 Fed. App'x. 637, 642 (11th Cir. 2007) (*citing Meeks v. Computer Assocs. Int'l*, 15 F.3d 1013, 1019 (11th Cir. 1994)). McCray has shown that the other cashier was not a member of her protected class. However, she cannot show that the other cashier occupied a similar job. In order to show that they occupied a similar job, McCray must show that she and the white cashier were "similarly situated in all relevant respects," *Holifield*, 115 F.3d at 1563, including in terms of training, experience, and performance. *See Smith v. Stratus Computer, Inc.*, 40 F.3d 11, 17 (1st Cir. 1994) (similarly situated in terms of performance, qualifications and conduct, "without such differentiating or mitigating circumstances that would

distinguish" their situations).

Unlike McCray, the other cashier continually received the highest possible performance ratings and an Associate Commendation, which led to higher raises. (Doc. #101). McCray received a lower performance rating, which led to a slightly lower annual raise. (Dcos #38-48). In addition, the other cashier started working for Wal-Mart with prior experience as a cashier. (Doc. #42-68 & 99). Thus, McCray cannot show that the white cashier was similarly situated in terms of performance and she therefore cannot establish a prima facie case.

Further, McCray fails to challenge Wal-Mart's race-neutral reasons for the disparity in pay. Wal-Mart set forth the reasons why the other cashier was better paid, including experience and performance. Thus, McCray has failed to meet her burden to prove the reason to be merely pretext. Therefore, summary judgment is appropriate.

### 4.    *Scheduling, Training, and Discipline*

Next, Wal-Mart moves for summary judgment on McCray's complaints of discrimination in regard to scheduling, training, and discipline. Wal-Mart summarizes McCray's complaint as such:

> Regarding scheduling, Plaintiff complains: 1) other Associates received "better" Saturday hours than she did; 2) she was the only full-time employee scheduled to work on Thanksgiving Day in 2003; 3) her request to be off the Saturday before Mother's Day in 2004 was denied; 4) during the first week in July of 2005 her hours were "cut up," meaning that her schedule started at different times each day, and that her hours were different each day and 5) her name was omitted from the schedule for one week in August 2005. Regarding discipline, she complains: 1) in March 2003, she was written up for a customer

complaint; 2) in May 2004, she received a written *Coaching* for refusing her Customer Service Manager's direct order to work on a check out counter; 3) in 2005, she allegedly received a pink slip for putting an "X" on a traveler's check; and 4) on another occasion, she allegedly received a pink slip for not maintaining an organized drawer at her cashier stand. Regarding training, Plaintiff testified only that if she had been properly trained, she would have known better than to put an "X" on the traveler's check.

(Doc. #46 at 18-19).  Wal-Mart asserts that McCray is unable to establish a prima facie case of discrimination as to any of these claims.

These claims are based on disparate treatment.  In order to establish a prima facie case of disparate treatment, McCray must show: "(1) she is a member of a group protected by Title VII; (2) she was qualified for the position or benefit sought; (3) she suffered an adverse effect on her employment; and (4) she suffered from a differential application of work or disciplinary rules." *Spivey v. Beverly Enterprises, Inc.*, 196 F.3d 1309, 1312 (11th Cir.1999).

"[T]o prove adverse employment action[ ], an employee must show a serious and material change in the terms, conditions, or privileges of employment.  Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1245 (11th Cir. 2001).  McCray has failed to establish, or even allege, that changes in her schedule, the discipline she received in the form of memorandum, or her training were serious, material changes in the terms, conditions, or privileges of her employment. *See id*. (finding that poor job performance memos and changes in work-assignment were not adverse employment

26

actions).  The facts do not establish that McCray suffered any adverse employment action.

However, even were the Court to presume a prima facie case as to each of these claims, Wal-Mart has, again, articulated nondiscriminatory reasons for its actions.  With regard to scheduling, Wal-Mart provided the Court with evidence that scheduling was done by a computer, involving a formulation of the employee's availability, shift times, and employee rankings not based on race.

In regard to discipline, Wal-Mart has provided the Court with the documentation surrounding McCray's discipline as well as testimony in support, *see* e.g. (Docs. #42-1, 42-9 & 42-17), which articulate nondiscriminatory reasons for the discipline.  Further, McCray's own deposition testimony provides similar, non-discriminatory explanations for the discipline.  In her depositions, McCray states that, in 2002, she was written up for refusing to go to an assigned cash register.  (Doc. #42-10 at 70).  McCray said that she did not want to work at the cash register because it was too cold, and that, if Wal-Mart was going to embrace every race of people, they would have to consider that "some people are more cold natured than others."  *Id*. at 71.   Thus, McCray admits that her disciplinary write-up was because she refused to work at an assigned cash register.  She also admits that the supervisor who wrote her up was also black, that no other cashier refused to go to an assigned register, and that neither the write-up, nor her written response to it mentioned anything about race being a factor in the disciplinary action. *Id*. at 72-73.

With regard to training, McCray states that her lack of training led to her receipt of

a "pink slip" for having an unorganized drawer.  Wal-Mart states that it is not aware of the

incident and that there is no record or evidence of the incident occurring.  McCray has not

provided any evidence of the "pink slip." In essence, McCray has made the allegation,

provided a nondiscriminatory reason for the incident, then failed to prove the reason pretext.

The Court finds that McCray is not able to prove a prima facie claim of disparate

treatment and that, even if the Court were to assume that she did, Wal-Mart has articulated

nondiscriminatory reasons for the employment actions and McCray has not met her "ultimate

burden of proving the reasons to be a pretext for unlawful discrimination." *Denney v. City*

*of Albany*, 247 F.3d 1172, 1183 (11th Cir. 2001).   Therefore, summary judgment is

appropriate.[5]

### 5.    *Hostile Work Environment*

Finally, Wal-Mart moves for summary judgment on McCray's claim of hostile work

environment based on racial harassment.[6]  As the Court of Appeals for the Eleventh Circuit

has stated:

This court has repeatedly instructed that a plaintiff wishing to establish a

---

[5] In this Circuit, "[t]he 'ultimate question' in a disparate treatment case is not whether the plaintiff established a *prima facie* case or demonstrated pretext, but 'whether the defendant intentionally discriminated against the plaintiff.'" *Nix v. WLCY Radio/Rahall Commc's*, 738 F.2d 1181, 1184 (11th Cir.1984) (*quoting Aikens*, 460 U.S. at 714-15).  Thus, even after undertaking the prima facie analysis above, the Court has reviewed the entire record in consideration of the motion for summary judgment and finds that there was no intentional discrimination against McCray.

[6] Wal-Mart already moved for Judgment on the Pleadings for McCray's claim of hostile work environment racial harassment, as the claim had not been exhausted in her EEOC complaint.  Wal-Mart also moves for Summary Judgment on the claim to the extent that McCray has fashioned a claim of harassment by combining the existing exhausted claims.

hostile work environment claim show: (1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee, such as national origin; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability.

*Miller v. Kenworth of Dothan, Inc.*, 277 F. 3d 1269, 1275 (11th Cir. 2002). In this claim, McCray relies on all of her previously discussed allegations of discrimination as well as two incidents involving underpayment of paychecks, and a dress code incident. The Court has already determined that McCray was not discriminated against in her pervious allegations.

As to the paycheck incidents, McCray never claimed that those incidents were related to her race. In addition, those paycheck issues were resolved in McCray's favor in a timely manner and she can not show that it altered the terms and conditions of employment and created a discriminatorily abusive working environment. *See* (Doc. #42-10 at 57-59). Similarly, with regard to the dress code incident, McCray can not show a hostile working environment. In 2004, McCray wore a beret while on the job. (Doc. #42-10 at 76). Her supervisor informed her that it was against store policy to wear hats, so McCray asked if she could wear a scarf, to which Wal-Mart agreed. *Id*. at 77. The issue was resolved to McCray's satisfaction. *Id*. These are hardly the type of discriminatory actions that would render a "workplace [] permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal

quotations and citations omitted).

The Court finds McCray is unable to make a prima facie case of hostile work environment based on racial harassment.  Therefore summary judgment is appropriate.

## IV.    CONCLUSION

For the reasons specified above, the Magistrate Judge RECOMMENDS that the Motion for Judgment on the Pleadings (Doc. #40), and the  Motion for Summary Judgment (Doc. #42),  be GRANTED, the Motion for Denial of Summary Judgment (Doc. #52) be DENIED, and this case be DISMISSED.  It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation by **9 March 2009**.  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation objected to.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the

decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

DONE this 23rd day of February, 2009.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE